MARSH v. KEOGH et al.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. TRUSTS—DEPOSIT IN SAVINGS BANK—WITHDRAWAL BY DEPOSITOR.

A childless widow adopted a descendant, declaring her intention to leave him some of her property. She had previously executed a will leaving him $2,000, which, after the adoption, she increased by codicil to $3,000. She also made deposits in three savings banks, in her own name, "in trust for" her adopted son. She retained the passbooks, and all these accounts were left open at the time of her death; but she had withdrawn the larger portion of the deposits in two of the banks, and it did not appear what disposition she made of the money so withdrawn. *Held*, that by such deposits she created valid and irrevocable trusts for his benefit, and he could recover the amounts so withdrawn, with interest thereon, from her executors.

Action by Leonora A. Marsh, as general guardian of Horace B. Marsh, a minor, against Martin J. Keogh and another, as executors of the will of Louisa B. Marsh, deceased. Submitted under Code Civ. Proc. § 1279. Judgment for plaintiff.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

George W. Carr, for plaintiff. ·
John F. Coffin, for defendants.

JENKS, J. This is a controversy submitted pursuant to section 1279 of the Code of Civil Procedure.

Louisa B. Marsh, widow, in 1893 legally adopted Horace E. Russ, her great-great-nephew, and he received the name of Horace B. Marsh. At the time of adoption, Mrs. Marsh declared in the affidavit required by law that she was willing to treat the child in all respects as if he were her own, and that it was her intention to leave to him at her death some portion of her property, and that she was more able than his mother to provide for him. She deposited the sums of $500, in 1897 and in 1898, to the credit of an account opened by her on the earlier date in a savings bank, reading, "Louisa B. Marsh, in trust for Horace B. Marsh, son, 14 years." Between February, 1900, and February 21, 1901, she withdrew $880, and left the account open at her death, with credits of $119, and $115 accrued interest. She made similar deposits in the same years in another savings bank in the name of "Louisa B. Marsh, in trust for Horace B. Marsh." She drew therefrom $1,098 between January, 1900, and May, 1901, but left the account open at her death, with a credit of $25 interest. She made similar deposits in 1897, and again in 1898, in an account opened by her on the earlier date in a savings bank, which read, "Louisa B. Marsh, in trust for Horace B. Marsh." She never disturbed this account, but left it open at her death. She died unmarried in 1901, leaving no children save the said adopted son. By will, she gave legacies amounting to $38,000. She bequeathed $2,000 to Horace E. Russ, which was increased by codicil, made after his adoption, to $3,000, to Horace Blancord Marsh. She provided that legacies amounting to $1,500 should be paid in full, and the remaining legacies, including the one to her adopted son, be paid ratably if necessary.

Thus it appears that the depositor, who was a childless widow of advanced years, adopted her great-great-nephew as her own child, and gave him her own name, asserting her ability to support him better than his parent could do, and her intention to leave him some portion of her own property. Upon the record, she created valid and irrevocable trusts for his benefit. There is nothing in proof which discloses any other or different intention. Such acts on her part are consistent with her declaration to provide for her only child, and there is nothing violently antagonistic thereto in the provision made for him in her will, which purported to dispose of $38,000 in legacies, inasmuch as $2,000 of the $3,000 so left to him by that instrument had been bequeathed before his adoption and before

her declarations. The retention of the passbooks was not necessarily inconsistent with the passing of the title to the deposits, as it has been held that the depositor may, under the circumstances, have retained them as trustee. Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446. It does not appear what disposition the trustee made of the moneys withdrawn. It is not necessary to hold, as the learned counsel for the defendants suggests, that this lady was a larcener of the money, before we can hold her estate liable for the trust moneys intact. She may have honestly mistaken the legal effect of her acts, and have supposed that the moneys were still her own. But, however this may be, we cannot infer, in the face of her deposits and the character of the accounts, that she had no intention of creating valid and irrevocable trusts simply from the circumstance that she from time to time depleted the deposits. A mere diversion of the trust fund could not destroy the trust, and we have nothing more than this naked fact. I think that we must give judgment to the plaintiff in such sum as represents the aggregate of the several deposits as if standing intact. Interest thereon must be allowed at the legal rate, under the authority of Robinson v. Appleby, 69 App. Div. 509, 75 N. Y. Supp. 1, affirmed 173 N. Y. ——, 66 N. E. 1115. This judgment is based upon the authorities of Farleigh v. Cadman, 159 N. Y. 169, 53 N. E. 808; Martin v. Funk, supra; Jenkins v. Baker, 77 App. Div. 509, 78 N. Y. Supp. 1074; and many similar authorities.

Judgment in accordance is given for the plaintiff, but, under the terms of the submission, without costs. All concur.